**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **DANIEL ENGUITA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. B-04-121** |
| | § | |
| **NEOPLAN USA CORP.** | § | |
| | § | |
| **Defendant.** | § | |

**OPINION & ORDER**

BE IT REMEMBERED that on December 2, 2005, the Court **GRANTED**
Defendant's Motion for Summary Judgment.  Dkt. No. 42.

**I.    Background**

Daniel Enguita ("Plaintiff"), a citizen of Spain and a former Texas domiciliary,
began working for Neoplan USA Corporation ("Defendant" or "Neoplan USA"), a
Colorado corporation, and its predecessor corporation ("Neoplan") around 1961.  *See*
Deposition of Daniel Enguita 18–20 (July 27, 2005) [hereinafter "Enguita Depo"].
Plaintiff worked for Neoplan outside the United States for approximately 22 years.  *Id.*
at 20.  Plaintiff came to the United States around 1983.  *Id.*  In the United States,
Plaintiff worked for Neoplan in several cities, primarily in Colorado.  *Id.* at 20–21.

During his time working for Defendant in the United States, Plaintiff was
responsible for various duties and held various titles, including Plant Manager, Special
Project Manager, Coordinator of New Projects, and Production Supervisor.  *Id.* at 23,
55–56.  One of his duties was to help start up new plants.  *Id.* at 20.  It was this duty
that sent Plaintiff to Brownsville, Texas, where he helped open a plant in late 2000 or
early 2001.  *Id.* at 23–24.

-1-

Plaintiff worked at the Neoplan USA[1] plant in Brownsville for one and a half years.  *Id.* at 20, 23.  On April 24, 2002, Plaintiff received a letter informing him that the plant would be closing as of June 24, 2002.  *See* Dkt. No. 42, Ex. 3A (letter from John Russell) [hereinafter "Russell Letter"]; Dkt. No. 43, Ex. 3, ¶ 5 (Affidavit of Daniel Enguita of October 6, 2005) [hereinafter "Enguita Affidavit 2"].  This letter was from the President of Neoplan USA, John Russell.  Russell Letter, *supra*.  The "re:" line of the letter states that it was in regard to a temporary shut down, and the letter states that the Brownsville plant would "be idled."  *Id.*  However, the letter also mentions Mr. Enguita's "last day of work" and it states that he would be receiving "a severance benefit."  *Id.*  Finally, the letter expresses that the management "hope[d] that this plant [could] be re-opened in 12 to 18 months," but it expressly conditioned this hope on business factors and declared that "there [was] no guarantee that this [would] happen."  *Id.*  Accordingly, Plaintiff's last day of work at Neoplan USA was June 24, 2002 — the last day the Brownsville plant was open.  Dkt. No. 43, Ex. 4, ¶¶ 9, 10 (Affidavit of Daniel Enguita of March 5, 2005) [hereinafter "Enguita Affidavit 1"].  Plaintiff was 60 years of age at this time.  Enguita Depo, *supra*, at 6.

While Plaintiff worked for Neoplan USA, he went on disability twice.  *See* Dkt. No. 43, Ex. P.  He first went on disability from September 9, 1998 through December 15, 1998 — two years prior to the opening of the Brownsville plant.  *Id.*  The second time Plaintiff went on disability was from February 22, 2002 until March 31, 2002 — a few months before the Brownsville plant closed.  *Id.*  Plaintiff provides three reasons why he went on disability — he had arthritis, hip replacement surgery on both hips, and spinal stenosis surgery.  *See* Enguita Depo, *supra*, at 35–37, 61–65; Dkt. No. 43, Ex. Q.  The timing as to which reason necessitated which leave is uncertain in the record.  *See* Enguita Depo, *supra*, at 35–37, 61–65.  In any event, it is clear that Plaintiff was able to resume his duties after his surgeries and that he successfully returned to work after each of his leaves of absence.

---

[1]Neoplan USA broke off from Neoplan as a separate company sometime in the late 1990s.  Enguita Depo, *supra*, at 19.

It is uncontested that the Brownsville plant was closed for financial and economic reasons.  Enguita Depo, *supra*, at 24.  It is not clear, however, how many employees worked at the Brownsville plant when it was closed.  *Compare id.*, *with* Dkt. No. 43, at 19; Dkt. No. 43, Ex. J.  Although Plaintiff states in his deposition that the plant only had 80 or 90 employees, Enguita Depo, *supra*, at 24, Plaintiff and Defendant both state that the plant had 143 employees when it closed.  Affidavit of Pat Robinette, Dkt. No. 42, Ex. 3; Dkt. No. 43, at 19; Dkt. No. 43, Ex. J.  For purposes of this motion, the Court will accept Plaintiff's statement that the plant only employed 80 persons as of June 24, 2002.[2]

Of these employees, none were retained in Brownsville.  Enguita Depo, *supra*, at 24.  At least one, and possibly several,[3] were retained by Neoplan USA through transfers to other locations, however.  *Id.* at 24, 46–47; Enguita Affidavit 2, *supra*, ¶ 5; Dkt. No. 19, Ex. B.  Plaintiff specifically points to Bob Tatum[4] as an employee who was

---

[2]As will be discussed in the next section, the Court is required to accept all facts in the light most favorable to the non-moving part, in this case the Plaintiff.

[3]Plaintiff gave several names in his original charge filed with the EEOC and the Texas Commission on Human Rights, but did not provide any affirmative evidence that any of the people named actually worked in Brownsville or that they were retained when the Brownsville plant was closed.  Dkt. No. 19, Ex. B.  In particular, Plaintiff's original charge indicated that, in addition to Mr. Tatum, Dorothy Elliot and Ivan Rogers were allowed to relocate.  Dkt. No. 19, Ex. B.  However, Plaintiff did not provide any evidence of what position these individuals held in Brownsville, what position they held after they were transferred, what their qualifications were, or even to what location they were transferred.  Moreover, at his deposition Plaintiff had no recollection of these individuals or what positions they may have held, thereby displaying an inability to provide any further information regarding them.  Enguita Depo, *supra*, at 39–41, 46–47.  Thus, because these allegations are unsupported by any evidence other than Plaintiff's initial charge, the Court will not consider them in its analysis.  *See* Molnar v. Ebasco Constr., Inc., 986 F.2d 115, 119 (5th Cir. 1993); Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507 (5th Cir. 1988).  The Court notes, however, that the inclusion of these individuals would make no difference in the disposition of this motion.

[4]The spelling of Mr. Tatum's name is not clear from the record.  *See, e.g.*, Dkt. No. 19, Ex. B ("Taton"); Dkt. No. 42, Ex. 3 ("Tatum"); Dkt. No. 43, at 13 ("Tatom").  The Court will use the "Tatum" spelling throughout this opinion purely for the sake of

transferred to another location.  Enguita Depo, *supra*, at 24; Dkt. No. 43, at 12.  Mr. Tatum, who was 48 years old, held the position of Project Manager II at the Brownsville plant.  Enguita Depo, *supra*, at 56.  When the plant closed, Mr. Tatum accepted the position of field representative—a lower paying position—and was transferred to Colorado.  Dkt. No. 42, Ex. 3, ¶ 5.  Defendant declares, by way of the affidavit of Pat Robinette, that it also offered this same option of accepting a transfer and a lower paying position to Plaintiff but Plaintiff denies that he was made this offer.  *See* Dkt. No. 42, Ex. 3, ¶ 5; Enguita Depo, *supra*, at 45.  For purposes of this motion, the Court will accept the evidence most favorable to the Plaintiff as true—that Plaintiff was made no offer of retaining his employment with the Defendant by transferring to another location.

Plaintiff brought suit against his former employer after he was discharged and not offered another position with the Defendant.  *See* Dkt. No. 19, Ex. A (Plaintiff's Original Petition).  Plaintiff alleges that he was discriminated against for three separate reasons, all in violation of federal law.  *Id.* at 3; Dkt. No. 37, at 3–4 (Plaintiff's First Amended Complaint).  First, Plaintiff asserts that he was discriminated against based on his national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*  Dkt. No. 37, at 3.  Second, Plaintiff avers that he was discriminated against based on a perception by Defendant that he was disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  *Id.* at 4.  Finally, Plaintiff claims he was discriminated against because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  *Id.*  Presently before the Court is the Defendant's Motion for Summary Judgment as to all of these claims.  Dkt. No. 42.

## II.    Standard for Summary Judgment

Summary judgment is appropriate when the movant is able to show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Arbaugh v. Y&H Corp., 380 F.3d 219, 222 (5th Cir.

---

consistency.

-4-

2004); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004).  All factual issues must be resolved in favor of the non-moving party, and the Court is to view the evidence in the light most favorable to the non-moving party.  *See Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891; Heckler v. Product Dev. Corp., 2003 WL 22961214, *2 (N.D. Tex. 2003).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that there are no genuine issues of fact.  *See Lockett*, 337 F. Supp. 2d at 891.  If the movant meets this burden, the non-movant must then come forward with specific facts to show that there is a genuine issue of fact.  *Id.*; *see also Arbaugh*, 380 F.3d at 222.  The non-movant may not rely on mere conclusory allegations or on the pleadings.  *Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891.  Rather, the existence of specific evidence must be demonstrated to the court.  *Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to render a verdict for the non-moving party.  *Arbaugh*, 380 F.3d at 222.  "Summary judgment is appropriate, however, if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Id.* at 222–23 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Summary judgment is not usually appropriate for claims based on discrimination, because they "involve nebulous questions of motivation and intent."  Linetsky v. Eurpac Serv. Inc., 1998 U.S. Dist. LEXIS 17892, at *5 (N.D. Tex. Nov. 7, 1998) (CA 3:97-CV-2825-R) (citation omitted).  "However, if the defendant is able to present strong evidence of a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may properly be granted."  *Id.* at *6 (citations omitted).  Furthermore, "the failure to establish a prima

facie case generally means that there are no material facts at issue." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 641 n.9 (5th Cir. 1985), *abrogated by* St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

## III.  Procedure for Discrimination Claims

Proof of discrimination can be through either direct or circumstantial evidence. *See* Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 40 (5th Cir. 1996); Williams v. Gen. Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981); *Linetsky*, 1998 U.S. Dist. LEXIS at *7. If the Plaintiff can offer direct evidence of discrimination, the Plaintiff should prevail. *Nichols*, 81 F.3d at 40.  If direct evidence is not available, which it often is not in discrimination cases, then "[c]ircumstantial evidence, be it statistical evidence, evidence of employer subterfuge, or other forms, also . . . suffice[s] so long as it serves the general purpose of supporting the asserted proposition and excluding other propositions."  *Williams*, 656 F.2d at 130; *see also Nichols*, 81 F.3d at 40 ("[D]irect evidence of discrimination is rare.").

To facilitate the presentation of proof in circumstantial-evidence discrimination claims, the United States Supreme Court has articulated an evidentiary procedure for discrimination cases.  *Nichols*, 81 F.3d at 40.  This procedure is a burden-shifting analysis that applies to Title VII, ADA, and ADEA claims.  *See, e.g.*, Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3 (2003) (The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases." (citing Pugh v. Attica, 259 F.3d 619, 626 (7th Cir. 2001)); Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005) ("ADA claims are evaluated by the burden-shifting framework."); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990) ("The shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under ADEA." (citation omitted)); Eugene v. Rumsfeld, 168 F. Supp. 2d 655, 665 (S.D. Tex. 2001) ("This method of analysis is utilized for both Title VII and ADEA claims." (citations omitted)).

The original burden-shifting procedure was devised by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Since its creation, it has

undergone some minor modifications to adapt the test for various circumstances. The Fifth Circuit currently employs a "modified *McDonnell Douglas* approach." Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). Under this approach,

> the plaintiff must . . . demonstrate a prima facie case of discrimination; the defendant must then articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motives alternative).'"

*Id.* (quoting Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003) (citing and quoting Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc., 285 F. Supp. 2d 1180, 1197–98 (N.D. Iowa 2003))).

Finally, there are a few other significant procedural considerations that must be taken into account. First, there are two theories under which a plaintiff may proceed to show liability for discrimination: "disparate treatment or disparate impact." *Rose*, 902 F.2d at 1421. Disparate treatment occurs when an "employer treats some people less favorably than others because of their" protected classification. *Id.* In contrast, disparate impact involves "facially neutral employment practices which have a discriminatory impact." *Id.* Second, the burden-shifting framework involves the burden of *production*, not the burden of *proof*. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). The initial burden of production is on the Plaintiff, who must come forward with evidence sufficient to establish his prima facie case. *See Rachid*, 376 F.3d at 312; *Nichols*, 81 F.3d at 41; *Linetsky*, 1998 U.S. Dist. LEXIS at *11, *12–*15. If the Plaintiff establishes his prima facie case, which requires only minimal evidence and involves a relatively low burden, a presumption of discrimination arises. *See Nichols*, 81 F.3d at 41; *Linetsky*, 1998 U.S. Dist. LEXIS at *14–*15; *see also Hicks*, 509 U.S. at 506, 510–11. The burden of production then shifts to the Defendant, which must provide some legitimate reason for the adverse action. *See Hicks*, 509 U.S. at 506–07; *Rachid*,

376 F.3d at 312; *Nichols*, 81 F.3d at 41; *Linetsky*, 1998 U.S. Dist. LEXIS at \*12, \*15–\*16. The proffered justification is not subject to a credibility determination, however, but merely must "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks*, 509 U.S. at 507, 509 (emphases in original); *Nichols*, 81 F.3d at 41; *Linetsky*, 1998 U.S. Dist. LEXIS at \*15. The burden placed on Defendant is very low. *Eugene*, 168 F. Supp. 2d at 675; *Linetsky*, 1998 U.S. Dist. LEXIS at \*15. If the Defendant fulfills its minimal burden, the presumption of discrimination "simply drops out of the picture. *Hicks*, 509 U.S. at 510–11. Nonetheless, if the Plaintiff is able to show that Defendant's justification was not the real motivating factor behind the adverse action, that showing "*may*, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id*. at 511 (emphasis added). However, it does not *compel* such a finding. *Id*. Because "the Title VII plaintiff at all times bears the 'ultimate burden of persuasion,'" to survive summary judgment the Plaintiff must provide sufficient evidence for the factfinder to make "*a finding of discrimination*." *Id*. at 511, 512 n.4 (citations omitted) (emphasis in original).

In this case, Plaintiff offers no direct evidence of discrimination, but instead relies on circumstantial evidence. *See, e.g.*, Dkt. No. 43, at 1 ("However, there is circumstantial evidence . . . ."); Enguita Depo, *supra*, at 52 (Plaintiff's affirmative answer to the question of whether the only evidence of discrimination Plaintiff had was that some employees were allowed to continue to work for Defendant and Plaintiff was not). Plaintiff also provides no evidence of discrimination under a theory of disparate impact. *Id*. Therefore, the Court will utilize the burden-shifting framework to analyze all three of Plaintiff's claims to determine if Plaintiff has shown sufficient evidence of disparate treatment to survive Defendant's Motion for Summary Judgment.

## IV.    Prima Facie Title VII Claim

Title VII of the Civil Rights Act of 1964 makes it "an unlawful practice for an employer – to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, *because of* such individual's . . . national origin." 42 U.S.C. § 2000e-2(a) (2005) (emphasis added).

A prima facie case for a Title VII claim in reduction-in-force[5] ("RIF") cases consists of four elements.  The fourth element has two distinct variations.

> Hence, in order to establish a *prima facie* case of discrimination in a RIF case, a plaintiff may show:
>> (1) she is a member of a protected class;
>> (2) she was adversely affected by the employer's decision;
>> (3) she was qualified to assume another position; and
>> (4) others who were not members of the protected class remained in similar positions.
>
> . . . Alternatively, the plaintiff can demonstrate:
>> (1) she is a member of a protected group;
>> (2) she was adversely affected by the employer's decision;
>> (3) she was qualified to assume another position; and
>> (4) evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.

*Eugene*, 168 F. Supp. 2d at 668–69 (citations omitted).  In this case, Plaintiff is a member of a protected class, in that Title VII protects against national origin discrimination and he is a citizen of Spain.  42 U.S.C. § 2000e-2(a) (2005); Enguita Depo, *supra*, at 7–8.  It is also undisputed that Plaintiff was adversely affected, because he was fired when Defendant closed the Brownsville plant.  *See, e.g.*, Enguita Depo, *supra*, at 45.  Plaintiff has therefore satisfied the first two elements.

Plaintiff's claim begins to founder at the third element of his *prima facie* case.  It is clear from the record that Plaintiff was qualified, at the time of the plant closing, to perform his job.  *See, e.g.*, Dkt. No. 42, at 4–7; Dkt. No. 43, at 12, 15.  He likely was also qualified for numerous other positions.  Enguita Affidavit 2, *supra*, ¶ 4.  However, to be qualified to assume another position, Plaintiff must show that *other positions existed* and that he was qualified for those positions.  *See* Rose v. Wells Fargo & Co.,

---

[5]This case is a reduction-in-force case, because the discharge of Plaintiff stemmed from the closing of the entire Brownsville plant, not just Plaintiff's individual discharge.

902 F.2d 1417, 1422–23 (9th Cir. 1990); *Eugene*, 168 F. Supp. 2d at 669.  In his

response to Defendant's Motion for Summary Judgment, Plaintiff avers that Pat

Robinette "contradicts himself by saying that a job was offered, and does not state what

other jobs were available, where, at what skill level, or at what salary."  Dkt. No. 43, at

18.  The response goes on to state that "[i]t is beyond credence that this multinational

corporation had no open positions worldwide."  *Id.*  The Court finds these pleadings are

conclusory, devoid of evidentiary value, and unsupported by any summary judgment

evidence.  Plaintiff apparently mistakenly believes that Defendant has the burden of

showing that no other positions were available to which Plaintiff could have been

transferred.  This is not the case.  Plaintiff bears the burden of proving his case.  *See,*

*e.g.*, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).  Plaintiff must show

other specific positions he was qualified to hold.  *Rose*, 902 F.2d at 1422–23; *see also*

*Eugene*, 168 F. Supp. 2d at 669.  Plaintiff has failed to carry this burden.  Furthermore,

the affidavit of Pat Robinette,[6] which remains uncontroverted, clearly states that "there

were no similar positions of a supervisory position available for Mr. Enguita."  Affidavit

---

[6]Plaintiff objects to this affidavit on numerous grounds.  Dkt. No. 43, at 18–20.
The Court finds that all of these objections lack merit.  These objections involve
mischaracterizations and mis-readings of the statements made in the affidavit.  First,
Pat Robinette is the Human Resources Director for Defendant.  Dkt. No. 42, Ex. 3, ¶ 1.
Thus, he obviously has personal knowledge of everything he stated in his affidavit.
Second, the affidavit does not contain "unsupported allegations, conclusory contentions
without support, and . . . conclusions which are not readily rebuttable."  Dkt. No. 43, at
18.  The affidavit involves statements of fact about which the affiant had personal
knowledge and which may be rebutted with other facts.  Dkt. No. 42, Ex. 3.  Third, the
"inconsistencies" demonstrated are not inconsistent.  Dkt. No. 43, at 18.  The affiant
stated that no similar jobs were available, *not* that *no* jobs were available.  Dkt. No. 42,
Ex. 3, ¶ 4.  It also is not "beyond credence" that a large company would have no job
openings.  Dkt. No. 43, at 18.  Even assuming that Plaintiff was qualified for any job in
the entire organization, an assumption that is a stretch at best, Defendant was
*downsizing* at this time.  Enguita Depo, *supra*, at 24.  Defendant had to close the
Brownsville plant.  *Id.*  According to the affidavit, Defendant also went through
additional downsizing and other closings.  Dkt. No. 42, Ex. 3, ¶ 2.  Therefore, it is
reasonable to infer that the company did not have any open positions.  Finally, the
affiant's statement that all of the plant employees lost their jobs is true — Mr. Tatum did
*not* keep his job, but instead received a *different* job.  *Id.* ¶ 5.

of Pat Robinette, Dkt. No. 42, Ex. 3, ¶ 4.  This affidavit also states that Mr. Enguita was offered a position as a field representative.  *Id.*  Plaintiff contests this statement. Enguita Depo, *supra*, at 45.  Assuming, as it must, that Plaintiff was not offered this other position, the Court has scoured the record and found it barren of any evidence that specific other jobs even *existed*, let alone that other jobs existed *for which Plaintiff was qualified.*  Nevertheless, Plaintiff does point to one specific job—the position of field representative received by Mr. Tatum.  Plaintiff has also furnished some evidence that he was qualified for this position, by way of Defendant's claim that Plaintiff was also offered this position.  *See* Dkt. No. 42, Ex. 3, ¶ 4.  Thus, Plaintiff has provided the minimal evidence necessary to establish the third element of his prima facie case.  *See Eugene*, 168 F. Supp. 2d at 669.

Plaintiff's evidence finally fails, however, at the fourth element.  This element requires Plaintiff either to show that other people who were not in the protected class remained in similar positions or to provide other evidence showing an intent to discriminate in reaching the decision to discharge Plaintiff.  Plaintiff relies on the fact that Mr. Tatum, and possibly a few other individuals, was transferred to another position at another location.  *See, e.g.*, Enguita Affidavit 2, *supra*, ¶¶ 4, 5.  He also relies on his belief that he would be offered a position elsewhere.  *See, e.g.*, *id.* ¶ 6; Enguita Affidavit 1, *supra*, ¶¶ 5, 6, 8.  This belief is based partially on his "many years of experience with the company" and "conversations [he] had with management" and partially on a response to an inquiry he made in which he "was told that qualified employees would be offered positions elsewhere."  Enguita Affidavit 1, *supra*, ¶ 5. None of this evidence constitutes a basis for the fourth element.

First, Plaintiff fails to show that he was treated differently from other similarly situated persons.  In this case, "similarly situated" means other employees in the same position and with the same qualifications, pay rate, and other factors as Plaintiff.[7]  *See*

---

[7]Defendant asked Plaintiff a series of questions in his deposition that demonstrates a misunderstanding of the definition of "similarly situated" for discrimination purposes.  Enguita Depo, *supra*, at 29–30.  Defendant appears to

Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 405–06 (5th Cir. 1999); Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991).  Plaintiff identifies several people who were transferred by Defendant to other locations when he was not.  *See, e.g.*, Enguita Affidavit 2, *supra*, ¶ 5.  Plaintiff only provides any specific information about one of those people, however.  *Id.* ¶ 4.  As to Mr. Tatum, Plaintiff states that he held the title of Project Manager II.  Enguita Depo, *supra*, at 56.  This is the totality of information Plaintiff provides regarding Mr. Tatum.  Furthermore, Mr. Tatum was not retained in a similar position, but rather was transferred to the position of field representative.  Dkt. No. 42, Ex. 3, ¶ 5.  This reliance on an isolated incident which is a comparison to a person transferred to a non-similar job does not satisfy the fourth element.  *See Shackelford*, 190 F.3d at 405–06.  Second, Plaintiff's subjective belief that he would be offered a job elsewhere because of his many years with Defendant and because of his conversations with management cannot provide any support for his discrimination claims.  *See, e.g.*, Molnar v. Ebasco Constr., Inc., 986 F.2d 115, 119 (5th Cir. 1993).  Third, although Plaintiff's belief that "qualified employees would be offered positions elsewhere" may or may not be objective, it is not supported by the record.  Dkt. No. 43, Ex. 4, ¶ 5.  At a minimum, 80 people were fired from the Brownsville plant.  Enguita Depo, *supra*, at 24.  At most three or four of those people were transferred.  Dkt. No. 19, Ex. B.  Upwards of 95% of the employees at the Brownsville plant were not retained.  It is reasonable to infer that at least some of these non-retained employees must have been qualified.  Clearly then, not all "qualified employees" were retained.  The cumulation of this evidence makes it apparent that Plaintiff has not demonstrated that others were retained in similar positions or that the decision to discharge him was based on an intent to discriminate against him.  Plaintiff has failed to make a prima facie case for Title VII national origin discrimination.

---

believe that similarly situated refers to Plaintiff's treatment in comparison with other members of his protected class.  This is not the case.  For disparate treatment to occur, members of the protected class must be treated differently from persons who are not members of that class.  *See Shackelford*, 190 F.3d at 405; *Little*, 924 F.2d at 97; *Rose*, 902 F.2d at 1422–23.

**V.    Prima Facie ADA Claim**

The Americans with Disabilities Act makes it unlawful for an employer to "discriminate against a qualified individual with a disability *because of* the disability of such individual in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a) (2005) (emphasis added).

To establish a prima face claim for discrimination under the ADA, Plaintiff must establish the existence of three elements: "an ADA-qualifying disability; qualifications to perform the essential functions of her position with or without a reasonable accommodation; and an adverse action due to her disability."  Kratzer v. Rockwell Colins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005) (citations omitted).  Given that the burden on Plaintiff to make his prima facie showing is minimal, the Court finds that Plaintiff satisfies the final two elements: Plaintiff is capable of performing the functions of his job and was discharged.  Plaintiff's evidence that he suffers from a disability is questionable at best, however.

To have a disability under the ADA, Plaintiff must meet stringent requirements.  *See* Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002) ("[T]hese terms need to be interpreted strictly to create a demanding standard for qualifying as disabled.").  A disability is defined, as it pertains to an individual, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2) (2005).   The Supreme Court has stressed the importance of the term "major" in the phrase "major life activity."  *Williams*, 534 U.S. at 197.  Although stopping short of finding working as a major life activity, the Supreme Court has relied on the term "major" to find that "even assuming that working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job."  *Id.* at 200.

In this case, Plaintiff could theoretically fall into any of these categories.[8]  The first category is easily disposed of, however.  Plaintiff himself states that he "can do anything."  Enguita Depo, *supra*, at 11.  Furthermore, at the time of his discharge, Plaintiff *was* performing his job.  Dkt. No. 42, Ex. 3, ¶ 3.  Thus, given that Plaintiff offers evidence that he is limited only for the "major life activity" of working, Plaintiff is not disabled under subsection (A).

The second category requires Plaintiff to show that he has "a record of such an impairment."  There is no record that his hip surgeries, arthritis, or back surgery affected any "major life activity" other than working or that they created an inability to work in a broad range of jobs, as opposed to his specific job with Defendant.  Furthermore, Plaintiff was able to return to work after each surgery and had been working for several months prior to his discharge.  *See* Dkt. No. 42, Ex. 3, ¶ 3; Dkt. No. 43, Ex. P.  To qualify as being disabled under the second category of the statute, Plaintiff must prove that he had a record of being *substantially* limited in a *major* life activity.  *Williams*, 534 U.S. at 197–202.  With work again serving as Plaintiff's only alleged major life activity, even assuming that it qualifies, Plaintiff must have been unable to work in a broad range of jobs.  Plaintiff makes no showing of such inability.  In fact, Plaintiff returned to work after each instance in which he was actually limited by his "disabilities."  Dkt. No. 43, Ex. P.  Additionally, Plaintiff has not shown that he has a history of being unable to perform a broad range of jobs.[9]  Plaintiff does, however, have

---

[8]Although Plaintiff has only plead a perception of disability under subsection (C), he has made inadvertent references to the other subsections.  *See, e.g.*, Dkt. No. 43, at 13 ("This is more than a scintilla of evidence that some other reason was a *motivating factor* . . . ." (emphasis added)).  In the interests of thoroughness and completeness, the Court will discuss all three alternatives.

[9]In his Response to Motion for Summary Judgment, Plaintiff states: "That Mr. Enguitas [sic] had a history of disabling conditions, that he was able to overcome, and that was known to the Defendant is not contested."  Dkt. No. 43, at 16.  Based on this assertion, Plaintiff concludes that he "qualifies as being 'disabled' for the purposes of the anti-discrimination statutes."  *Id.*  The Court disagrees and finds that the definition of "disabled" is considerably more complex than Plaintiff believes.  Indeed, as Plaintiff

a record of impairments that limit his ability to work, if only for a relatively brief period of time. *See id.* The Court is not convinced that suffices as evidence that Plaintiff has a record of a "substantial" impairment, given the brief time frames involved. Nevertheless, the Court will assume for purposes of this Order that Plaintiff has satisfied his minimal burden of production and has established a *prima facie* case based on his record of having an impairment under subsection (B).

For the last category, the Court finds that Plaintiff has failed to make an adequate showing that he was regarded as having such an impairment. A plaintiff may be regarded as having such an impairment in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, 527 U.S. 471, 489 (1999). Plaintiff most clearly makes allegations under this category, as he avers that "Defendant had a perception that Plaintiff was disabled" and that he had "a perceived physical disability." Dkt. No. 37, at 2. However, Plaintiff does not provide any evidence showing that he was perceived as being disabled. Plaintiff does provide evidence that he went on disability leave twice, but he also provides evidence that he returned to work and was removed from disability leave both times. Dkt. No. 37, at 2; Dkt. No. 43, Ex. P. Thus, there is no indication that he was perceived as being disabled *once he returned to work*. Moreover, Plaintiff offers no evidence to link his discharge with a perception of him as being disabled. This Court will not assume that Plaintiff was perceived as being disabled just because

_____

points out, "it is possible to be 'disabled' for one purpose, and not disabled for another." *Id.* at 14. Thus, Plaintiff cannot satisfy the requirements for being disabled under the statute with nothing more than the conclusory allegation that he had "a history of disabling conditions." Other factors, such as what the "disabling conditions" were, how long they lasted, their severity, etcetera, are involved in the determination of whether a plaintiff is "disabled" under the statute. However, the Court notes that Plaintiff himself has undermined this argument by producing evidence of the times he went on disability, what he went on disability for, how long he was on disability, etcetera.

Defendant knew that Plaintiff had gone on disability leave in the past.[10]  Plaintiff has failed to make any showing that he was perceived as being disabled or connecting his discharge to a perception of disability, and therefore Plaintiff fails to meet the requirements to be considered disabled under subsection (C).

## VI.   Prima Facie ADEA Claim

The Age Discrimination in Employment Act states that "[i]t shall be unlawful for an employer — . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age."  29 U.S.C. § 623(a)(1) (2005) (emphasis added).

A *prima facie* case under the ADEA involves the same elements as the *prima facie* case under Title VII.  *See, e.g.*, Eugene v. Rumsfeld, 168 F. Supp. 2d 655, 664–65 (S.D. Tex. 2001).  In the context of an age discrimination claim, "the plaintiff must demonstrate that: (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of the discharge; and (4) she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age."  Linetsky v. Eurpac Serv. Inc., 1998 U.S. Dist. LEXIS 17892, *12 (N.D. Tex. Nov. 7, 1998) (CA 3:97-CV-2825-R) (internal quotations omitted).  In the context of a RIF, the factors change so that "the plaintiff is required to show: (1) that she is within the protected age group; (2) that she has been adversely affected by the employer's decision; (3) that she was qualified to assume another position at the time of the discharge; and (4) evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."  *Id.* (internal quotations omitted). However, the RIF factors only apply "when a company lays off protected individuals, while retaining younger employees in *similar* positions."  Brown v. CSC Logic, Inc., 82

---

[10]If the Court were to so find, it would effectively find a *prima facie* case for any person who goes on disability leave from work and is subsequently discharged at some later time.

F.3d 651, 654 (5th Cir. 1996); *Linetsky*, 1998 U.S. Dist. LEXIS at *13.

In this case, Plaintiff only provides evidence of one position in which another, younger employee was retained.  This position is that of field representative, which Mr. Tatum transferred into at the time of the plant closure.  *See* Dkt. No. 42, Ex. 3, ¶ 5.  The position of field representative is not similar to any of the positions Plaintiff held—Plant Manager, Special Project Manager, Coordinator of New Projects, and Production Supervisor.  Enguita Depo, *supra*, at 23, 55–56.  Plaintiff worked in managerial and supervisory positions, a category of positions in which "field representative" clearly does not lie.  Thus, Plaintiff cannot make a prima facie case of age discrimination based on the RIF factors.  *See Brown*, 82 F.3d at 654; *Linetsky*, 1998 U.S. Dist. LEXIS at *14.

Although Plaintiff does not satisfy the requirements under the RIF factors, he may still have a *prima facie* case of age discrimination under the standard factors.  *See Linetsky*, 1998 U.S. Dist. LEXIS at *14.  He was discharged from his position, was qualified for such position, and was 60—well within the protected class—at the time of his discharge, thereby satisfying the first three factors.  Although he was not replaced, he may still fulfill all of the requirements if he can show he was "otherwise discharged because of his age."  *Id.*

Unfortunately for Plaintiff, he is unable to make this showing.  Plaintiff provides no evidence of age discrimination beyond the sole allegation that Mr. Tatum was retained while Plaintiff was not.[11]  This single act of retaining Mr. Tatum does not

---

[11]The Court notes that although Mr. Tatum was also within the protected class, in that he was 48 years old, this does not dispositively prevent his retention from being an element in Plaintiff's age discrimination claim.  *See* Dkt. No. 42, Ex. 3, ¶ 5; Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir. 1988).  Although there is no specific age difference which has been determined to be sufficient to show age discrimination, courts have suggested that five or six years may be enough.  *Rachid*, 376 F.3d at 313 & n.12; *Bienkowski*, 851 F.2d at 1506.  Here, Plaintiff is twelve years older than Mr. Tatum.  This age difference therefore would likely be sufficient to show age discrimination, if Mr. Tatum had taken over Plaintiff's position or at least had been retained in a similar position.  *See Rachid*, 376 F.3d at 313 & n.12; *Bienkowski*, 851 F.2d at 1506.  Because neither of these events occurred, however, this Court makes no

-17-

suffice to establish a *prima facie* case of age discrimination.  Rather, this argument, that the retention of a single employee shows age discrimination, is highly tenuous and speculative.  *See, e.g.*, Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 405 (5th Cir. 1999) ("[T]he remaining evidence is too speculative and too reliant on isolated incidents to survive summary judgment.").  Plaintiff fails to make a *prima facie* case of age discrimination.

## VII.    Justification and Pretext

Once Plaintiff makes a *prima facie* showing of discrimination, the burden of production shifts to the Defendant to provide legitimate reasons for the adverse action taken against Plaintiff.  *See* St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996); *Linetsky*, 1998 U.S. Dist. LEXIS at *12, *15–*16.  The burden on Defendant is minimal and is not subject to a credibility determination.  *Hicks*, 509 U.S. at 507, 509; *Nichols*, 81 F.3d at 41; *Eugene*, 168 F. Supp. 2d at 675; *Linetsky*, 1998 U.S. Dist. LEXIS at *15.  Defendant must merely provide a reason which, if accepted as true, would permit the factfinder to conclude that the adverse action was not the result of illegal discrimination.  *Hicks*, 509 U.S. at 507, 509; *Nichols*, 81 F.3d at 41; *Linetsky*, 1998 U.S. Dist. LEXIS at *15.

If Defendant provides legitimate reasons for the adverse action, then the burden shifts back to Plaintiff to prove, by a preponderance of the evidence, that this reason is either a pretext for discrimination or that it is only one of multiple reasons for the adverse action, with another reason for the adverse action being discriminatory in nature.  *Rachid*, 376 F.3d at 312; *Nichols*, 81 F.3d at 41; *Eugene*, 168 F. Supp. 2d at 666.

For purposes of this motion, the Court has assumed that Plaintiff has satisfied

---

finding regarding the sufficiency of the age difference between these two men for purposes of showing age discrimination.

his burden of establishing a *prima facie* case with regard to his ADA claim.[12]  *See infra* § V.  Therefore, the Court will consider whether Defendant has provided a legitimate reason for Plaintiff's discharge and, if so, whether Plaintiff has shown that the legitimate reason is either a pretext or only one of multiple motives.

### A. Legitimate Reasons

Defendant has provided a legitimate reason for Plaintiff's discharge: the RIF. *See* Dkt. No. 42, at 7–9.  Plaintiff was discharged when Defendant closed the Brownsville plant.  *See* Enguita Depo, *supra*, at 45.  Plaintiff was one of between 80 and 143 people who either lost their jobs altogether or were transferred.  *Id.* at 24; Dkt. No. 42, Ex. 3; Dkt. No. 43, at 19.  It is undisputed that the plant was closed for economic and financial reasons.  Enguita Depo, *supra*, at 24.  This reason alone suffices to meet Defendant's burden of production.

Additionally, in response to Plaintiff's contention that he should have been transferred, Defendant avers that there were no similar positions of a supervisory or managerial nature available at the time of the plant closing.  Dkt. No. 42, Ex. 3, ¶ 4.  Inasmuch as Defendant is required to transfer employees,[13] this explanation of the events surrounding Plaintiff's discharge constitutes a sufficient, legitimate reason for that discharge.

### B. Pretext or Mixed-Motives

When a discrimination case "reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination."  *Shackelford*, 190 F.3d at 404.  Therefore, this Court must determine whether such a conflict exists.

The burden of showing that there is a conflict that creates a jury question lies on

---

[12]Although Plaintiff fails to make a *prima facie* showing of discrimination under his other claims, the Court notes that the analysis in this section applies equally to all of Plaintiff's claims.

[13]Whether or not a requirement to transfer will be discussed below, *infra* subsection (B).

the Plaintiff.  *See Hicks*, 509 U.S. at 511.  Plaintiff offers several arguments in an effort to carry this burden and establish a jury question.  As bases to show a conflict in evidence creating a jury question, Plaintiff asserts that (1) he believes that he was discriminated against and that Defendant would find him another job, *see* Enguita Affidavit 2, *supra*, ¶ 6; Dkt. No. 43, at 11; (2) he has shown that Defendant's proffered reasons for not retaining him were false, Dkt. No. 43, at 13; (3) he was clearly better qualified than other employees who were retained, Dkt. No. 43, at 11, 13; and (4) he should have been transferred because he was qualified and there were positions available, Enguita Affidavit 1, *supra*, ¶ 6.  Each of these assertions will be addressed in turn.

Plaintiff's first basis for showing a conflict in evidence is his own beliefs that he was discriminated against and that Defendant would find him another job.  Dkt. No. 43, at 11.  Neither of these beliefs establishes a conflict of evidence that creates a jury question of discrimination, however.  First, Plaintiff's "own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief." *Eugene*, 168 F. Supp. 2d at 679 (citations omitted); *see also* Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005) ("Septimus's belief that Duffy's decision was motivated by discrimination, however genuinely held, is not sufficient evidence of pretext."); Little v. Republic Ref. Co., 924 F.2d 93, 96 (5th Cir. 1991) ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value.").  Rather, "a plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext."  *Eugene*, 168 F. Supp. 2d at 677 (citations omitted).  Thus, Plaintiff's belief that he was discriminated against provides no basis for finding a jury question.

Second, Plaintiff believed that Defendant would find him another job with the company.  *See* Dkt. No. 43, at 11; Enguita Affidavit 1, *supra*.  Plaintiff's belief was predicated on three things — his years of service to the company, conversations he had with management, and a representation allegedly made to him "that qualified employees would be offered positions elsewhere."  Enguita Affidavit 1, *supra*, ¶ 5.  The

first basis, his years of service, is a subjective belief which suffers from the same deficiencies as his belief that he was discriminated against.  His subjective belief cannot provide the basis for a discrimination claim.  The second basis, his conversations with management, lacks sufficient specificity to provide a reasonable basis for finding that he would receive another position.  Finally, even if he was told that qualified employees would be transferred, this statement cannot lead to a finding of discrimination against him.  This is because the record clearly shows that, at the least, 77 out of 80 employees were not transferred.[14]  There is no evidence that Plaintiff was the only one of the 77 employees not transferred that was qualified, however.  Thus, whether or not he was told that qualified employees would be transferred to another location, this statement cannot provide evidence of discrimination such that there is a jury question.

Plaintiff next contends that he must only show "that the employer's proffered reason for the adverse action is false."  Dkt. No. 43, at 13.  Plaintiff avers that Defendant's "stated reason, that all employees were terminated, is false because Defendant admits that not all employees were terminated."  *Id.*  Plaintiff concludes this argument by stating that "[t]his is more than a scintilla of evidence that some other reason was a motivating factor in choosing to retain Mr. Tatom [sic], and discharge Mr. Enguita."  *Id.*  This argument also fails, for two reasons.  First, Plaintiff has not shown that Defendant's proffered reason for his discharge is false.  Defendant's proffered reason is the RIF—the closing of the Brownsville plant.  Dkt. No. 42, at 7–9.  The reason for Plaintiff's discharge is not that all employees were terminated, but that his workplace was closed.  *Id.*  Therefore, whether or not all employees were terminated makes no difference.  Furthermore, as will be seen below, Defendant has no duty to retain employees by way of transferring them.  *See infra.*  Thus, Plaintiff has not demonstrated that Defendant's proffered reason is false.  Second, even if this evidence did show that Defendant's reason was false, that does not necessarily lead to the

---

[14]These numbers are somewhere in the range from a low of 77/80 to a high of 142/143.  *See* Dkt. No. 19, Ex. B; Dkt. No. 42, Ex. 3, ¶ 2; Enguita Depo, *supra*, at 24.

conclusion that Plaintiff's case must survive summary judgment.  For support for his position, Plaintiff relies on *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).  That case held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated."  *Id.* at 148 (emphasis added).  The court also held, however, that "the strength of the plaintiff's prima facie case [and] the probative value of the proof that the employer's explanation is false" must be considered in determining whether "additional, independent evidence of discrimination" is necessary.  *Id.* at 148–49.  What is significant about this holding is that it specifically requires the Plaintiff to produce actual evidence of discrimination at some stage in the proceedings, whether that evidence be produced at the *prima facie* stage or the pretext stage.  In fact, a case that held that "affirmative proof of discrimination" was not required and that the Plaintiff "need only persuade the factfinder that the [Defendant's] purported good reasons were untrue" was abrogated by the Supreme Court on that very holding.  *See* Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 647 (5th Cir. 1985), *abrogated by* St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 512–20, 519 (1993) ("It is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.").  Therefore, it is clear that disproving the Defendant's reason alone is insufficient, the Plaintiff must affirmatively make at least a minimal showing of discrimination to survive summary judgment.[15]  Consequently, even if Plaintiff were able to show a disputed issue of fact regarding Defendant's proffered reasons, the Court would still have to determine that there is some evidence of discrimination before it could deny Defendant's Motion for Summary Judgment.  In this case, Plaintiff's only evidence of discrimination is that Mr. Tatum was transferred while Plaintiff was not.  Plaintiff has offered no evidence to link his protected characteristics to his discharge or lack of transferral, but relies instead on an inference that he was

---

[15]In other words, there must be some evidence in the record upon which the factfinder at trial could base a finding of discrimination.

discriminated against because Mr. Tatum was transferred while he was not.  As will be seen, this is insufficient evidence to survive summary judgment.[16]

Plaintiff also asserts that he is "clearly better qualified" than other retained employees, specifically Mr. Tatum.  Dkt. No. 43, at 11, 13.  Plaintiff is correct that evidence that he is "clearly better qualified" than other employees, not members of his protected classes, who were retained would create a genuine issue of material fact regarding whether he was the subject of discrimination.  Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996) (citation omitted).  This evidence cannot be "merely subjective and speculative," however.  Id. (citations omitted).  To establish a genuine issue of material fact based on the Plaintiff being "clearly better qualified," Plaintiff must provide specific reasons for his opinion, such as evidence of "comparative work performance."  Id.  To satisfy this requirement, Plaintiff asserts that he "had spent his entire adult life working for this firm in virtually the same position, as a coordinator of new plants and supervisor of the assembly line."  Dkt. No. 43, at 12.  He also avers that "[b]y experience, he was vastly more qualified than any other employee for his job."  Id. at 13.  According to him, Mr. Tatum had less seniority, responsibility, and experience.  Id.  Finally, Plaintiff declares that he is better qualified because of his "superior knowledge of the construction of buses and facilities owned by Neoplan."  Enguita Affidavit 2, supra, ¶ 4.

None of these offers of evidence is sufficient to show that Plaintiff was "clearly better qualified."  First and foremost, years served, experience, and seniority do not equate to superior qualifications.  See, e.g., Nichols, 81 F.3d at 42 (years served and experience); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 959 (5th Cir. 1993) (same);

---

[16]In this argument, Plaintiff for the first, and only, time asserts that "some other reason was a motivating factor in choosing to retain Mr. Tatom [sic], and discharge Mr. Enguita."  Dkt. No. 43, at 13.  However, the Court finds that the analysis in this section applies equally to both Plaintiff's assertion that Defendant's proffered reason is a pretext and to this assertion which is apparently intended to invoke the "mixed-motive" analysis.  The Court finds that, for the same reasons there is insufficient evidence to survive summary judgment on the pretext claim, there is also insufficient evidence to survive summary judgment under a mixed-motive analysis.

Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 813 & n.38 (5th Cir. 1991) (seniority).  Second, responsibility provides no more proof of superior qualifications than do years served, experience, and seniority.  Third, even if Plaintiff has "superior knowledge of the construction of buses," it does not necessarily follow that Plaintiff is better qualified for the position of field representative, the position obtained by Mr. Tatum.  The fact that Plaintiff spent virtually his entire adult life as a new plant coordinator and supervisor actually detracts from his argument that he is better qualified, because the qualifications for a field representative, which are the qualifications at issue for this argument, are presumably different from those required for supervisory positions and the position of new plant coordinator.[17]  In fact, the only evidence of Plaintiff's qualifications for this particular position is the assertion by the Defendant that he was offered this same position—an assertion which Plaintiff contests.  *See* Dkt. No. 42, Ex. 3, ¶ 5; Enguita Depo, *supra*, at 45.  Worse yet, there is no evidence in the record regarding Mr. Tatum's qualifications for this position, and therefore no method to compare Plaintiff's qualifications for this position against those of Mr. Tatum.  Thus, without objective evidence, and particularly without any comparative evidence, that he was "clearly better qualified" than other retained employees, Plaintiff fails to demonstrate a genuine issue of material fact regarding whether he was the subject of discrimination on this basis.  *See, e.g.*, *Nichols*, 81 F.3d at 42; Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 119 (5th Cir. 1993); *Amburgey*, 936 F.2d at 814.

Plaintiff also contends that there was work available, he was qualified to do that work, and therefore he should have been transferred.  Enguita Affidavit 1, *supra*, ¶ 6.  This argument too runs into several problems.  The biggest problem with this argument

---

[17]The relevant qualifications are not the overall knowledge of Neoplan's business or even the qualifications for any individual jobs at Neoplan, except the position of field representative.  This is because Plaintiff has pointed to no other position which had an opening he might have filled.  In fact, the Court is only aware of an opening as a field representative because Mr. Tatum was transferred and received such a position.

is that the Defendant had no duty to transfer the Plaintiff.  *See* Rose v. Wells Fargo & Co., 902 F.2d 1417, 1422–23 (9th Cir. 1990).  The only way a duty arises is if the Defendant voluntarily assumed such a duty.  *Id.* at 1422.  Although Plaintiff claims that Defendant stated it would transfer all qualified employees, Plaintiff concedes that most employees were not transferred.  Dkt. No. 19, Ex. B; Enguita Depo, *supra*, at 24. Therefore, the Court finds that Defendant did not voluntarily incur a duty to transfer its employees.  Even if it had incurred such a duty, however, Plaintiff would still have to "show that others not in the protected class were treated more favorably."  *Id.* at 1423 (quotation omitted).  Plaintiff identifies only Mr. Tatum as such a person.  Plaintiff does not point to any other specific jobs to which he may have been transferred and fails to prove that he was qualified for the position received by Mr. Tatum.[18]  *See Rose*, 902 F.2d at 1423.  Without more than this, Plaintiff has failed to show that Defendant violated a voluntarily assumed duty to transfer him by giving a position to a different employee outside of his protected classes.

In addition to failing to establish that Defendant's proffered reason is a pretext or is a facade for an ulterior motive, the Court also notes that all of the evidence submitted by the Plaintiff is self-serving and speculative.  Plaintiff only offers as evidence his own depositions, affidavits, and interrogatories.  This information is insufficient to overcome "proof showing an adequate, nondiscriminatory reason for his release."  *Molnar*, 986 F.2d at 119; *see also Nichols*, 81 F.3d at 42 ("Nichols submits only his own affidavit and deposition testimony."); *Amburgey*, 936 F.2d at 814 ("Amburgey, however, offers no such evidence or any other evidence of pretext beyond his own bald assertion that he has been discriminated against.").  Plaintiff's "indirect proof is barely enough to establish a prima facie case, and certainly not enough to rebut [the defendant]'s

---

[18]The only evidence that Plaintiff is qualified *for this position* is the Defendant's assertion that Plaintiff was offered the same arrangement as Mr. Tatum.  This evidence, while sufficient for purposes of establishing a prima facie case of discrimination, falls short of showing that Defendant's proffered reasons for discharging and not transferring Plaintiff are a pretext for or are covering up an additional, illegitimate motive.

legitimate reasons for the termination." *Molnar*, 986 F.2d at 119.

Finally, the Court finds that the decision to transfer Mr. Tatum and not Plaintiff is a legitimate business decision "which the court will not disturb." *Eugene*, 168 F. Supp. 2d at 678; *see also* Konowitz v. Schnadig Corp., 965 F.2d 230, 233 (7th Cir. 1992). "The employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of employment decisions nor . . . to transform the courts into personnel managers.'" *Eugene*, 168 F. Supp. 2d at 678 (quoting Equal Employment Opportunity Comm'n v. La. Office of Cmty. Servs., 47 F.3d 1438, 1448 (5th Cir. 1995)) (citations omitted). The Court concludes that the decision to retain Mr. Tatum cannot be other than a business decision and that it will not disturb such a decision.

## VIII.   Conclusion

Based on the foregoing analysis, the Court finds that Plaintiff only established a *prima facie* case for his claim of discrimination based on the perception that he was disabled. This claim barely amounts to a *prima facie* case, and Defendant proffered a legitimate reason for the objected-to actions of discharging and not transferring Plaintiff. Plaintiff failed to offer any evidence that shows this reason is a pretext or is a facade for an ulterior illegitimate purpose, and Plaintiff failed to submit evidence that the adverse action taken by Defendant against him was the result of discriminatory intent. Therefore, Plaintiff has failed to offer sufficient evidence to survive summary judgment.[19]

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. Dkt. No. 42.

DONE at Brownsville, Texas, this 2nd day of December, 2005.

Hilda G. Tagle
United States District Judge

---

[19]The Court notes that the discovery period has already ended in this case, so Plaintiff has had an opportunity to find additional evidence to support his claims.